Pearson, J.
 

 The counsel of the defendants insisted, that the money, advanced by Bryan, would in law operate as a payment, unless there was a valid assignment of the judgment.
 

 This position is untenable. It is well settled, that judgments, as well as notes, may be kept up for the benefit of a surety, who advanced the amount of the debt to the creditor. This could not be, if a valid assignment was necessary; for judgments are not negotiable, and an assignment does not pass the legal interest. If the money be advanced by the surety, it is presumed to be a payment, and it is necessary to rebut this presumption, by taking an assignment to a third person. If it be a note, the legal interest passes to the assignee, to the use of the surety. If a judgment, the legal interest does not pass ; and the only effect of the assignment is to rebut the presumption of payment by an unequivocal act, shpwing the intention to be, to keep up and not to extinguish the judgment.
 

 If the money be advanced by a third person, (as was done in this case,) there is no presumption of payment, for a payment cannot be made by a stranger, and there is no
 
 *443
 
 occasion for an assignment. The only purpose it can answer, when the security is not negotiable, is to furnish proof, in reply to any that, by possibility, might be made, tending to show that the money belonged to the debtor. For such purpose it is not necessary that the assignment should be valid ; it is sufficient for it to be made by the person to whom the money is paid, as explanatory of the act — apart of the
 
 res gesta,
 
 showing the intention.
 

 The counsel further insisted, that “if it was a part of the agreement, that Dawson should have a receipt from the treasurer to enable him to renew his bonds, the contract was void, and could not be set up in explanation of the receipt.”
 

 The charge in response to this, is “supposing there had been an after arrangement between Dawson and the treasurer of the commissioners, by which the receipt in question was to be given, and an imposition thus practrised upon the Court in the renewal of the sheriff’s bonds; and supposing further, that the sheriff could avail himself of his own fraud, such an arrangement would certainly not. affect injuriously the right of one not a party to it. Indeed, if there had been an original fraudulent design, entertained by Dawson and Gooding, afterwards carried into effect by the execution of the receipt, it would not invalidate the transaction as a purchase, unless the purchaser participated in it.”
 

 The defendant excepts, because the charge is not responsive to the instruction prayed. We think the exception well founded. The instruction, prayed for, is not stated with much distinctness, and it is probable that in the hurry of the trial, his Honor did not fully apprehend it; it alleges, as a fact, that Bryan was a party to the fraudulent agreement, and as a matter of law, that if such was the fact, the plaintiffs could not explain the receipt.
 

 
 *444
 
 If the Court was against the defendants, upon the law, they had a right to have the opinion positively'- expressed ; if with them, to have the fact
 
 directly
 
 and distinctly submitted to the jury. We infer that his Honor was with the defendants, upon the matter of law. But the fact was not directly and distinctly left to the jury. The first proposition, which supposes an after arrangement between Dawson and the treasurer; and the second, which supposes, that Dawson could take advantage of his own fraud; and the conclusion, that such an arrangement would not affect injuriously the right of onp, not a party to it; do not touch the instruction prayed for.
 

 The last proposition, that if there was an original fraudulent design between Dawson and Gooding, it would not invalidate the transaction as a purchase, unless the purchaser participated in it, is an
 
 inferential
 
 expression of opinion, in favor of the defendants as to the law. But it does not bring to the notice of the jury, the matter of fact, whether Bryan was or was not a party or privy to the fraud. In the prominent and direct manner, in which the defendants had a right to have it presented, it was the pivot upon which the ease turned, so far as the jury were concerned, yet it is introduced indirectly, with the word “unless,” treating it as a new qualification of a preceding proposition.
 

 A Judge is not required to respond in the very words of the instruction, but it is error, if he does not substantially meet the matter of law and put the matter of fact directly to the jury.
 

 The defendants are entitled to anew trial, if the matter of law be with them, assuming the fact to be' as they allege.
 

 The agreement was a fraud upon the public ; if it was executory, no Court would enforce it; but it was executed and the inquiry is, as to its effect.
 

 
 *445
 
 The defendants insist, that as a fraud was practised upon the Court, by Dawson and the treasurer of the plaintiffs and Bryan, for whom the plaintiffs hold the legal estate, the receipt by which the fraud was effected cannot be explained, and it must be taken as a fact, that Dawson did pay the judgment.
 

 It is clear that this is not according to the truth, for Dawson never paid one cent. The money belonged to Bryan and he allowed Gooding to give Dawson a receipt for the taxes of property listed in 1841, by which the Court were deceived. Upon what principle can this establish a payment by Dawson, or shut out the truth, as between the parties to the fraud? If, instead of a receipt for the taxes for which the judgment was taken, satisfaction had been entered upon the record, that would have discharged the judgment (as a release discharges a bond) and the parties would have been concluded. But a receipt never concludes : it is merely a written admission, and may be explained like a verbal one. Here the very fact of the fraud explains the receipt, and shows how it happened to be given, when no money was paid by Dawson. It is a key to the transaction and opens it at once. Bryan advanced the money, took the judgment as a security, and permitted a falsehood to be certified to the Court, to accomodate his friend Dawson.
 

 Relieved of all collateral matter, it is simply this case: a creditor give his debtor a receipt (no money being paid,) to enable him to acquire a false credit; does that pay the debt, or prevent the creditor from explaining the receipt ? What right a person, defrauded by such a falsehood, may have, is another question. The debtor canhot, on the receipt, except as evidence of a payment, and the other evidence shows it to be false.
 

 Upon the whole the defendants haveno right to complain.
 

 Per Curiam.
 

 Judgment affirmed.